UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OMAR OSACIO,

                            Plaintiffs,

      v.                                                    08-CV-0018

GARY GREENE, Former Supt., Great Meadow
Correctional Facility; LUCIEN J. LECLAIRE,
Dep. Comm'r NYSDOCS; KENNETH MCLAUGHLIN;
SGT. C. MURRY; CO F. DELUKE; CO D. BEEBE;
DR. ALBERT PAULOANO; JULIE DANIELS;
NURSE K. BAYER; NURSE S. NICHOLS; et al.,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

      Plaintiff, Omar Osacio, brought the instant action pro se pursuant to 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated though: (1) the use of excessive force against him at the Great Meadow Correctional Facility on January 13, 2006; and (2) deliberate indifference to his medical condition, arising from the January 13th incident. Defendants move for summary judgment arguing that: (1) Plaintiff failed to exhaust all available administrative remedies; (2) several Defendants should be dismissed for lack of personal involvement; (3) Defendants are entitled to qualified immunity; (4) there was no excessive force in violation of the Eighth Amendment; (5) Plaintiff's injury did not constitute a

serious medical need; and (6) there was no deliberate indifference to Plaintiff's medical needs.

**I.      FACTS**

On January 13, 2006 Plaintiff was being returned to his special housing unit (SHU) cell by Defendants Officer Deluke and Officer Beebe. Plaintiff was handcuffed behind his back. A retention strap was used to secure the cuffs. Upon returning Plaintiff to his cell, Plaintiff extended his handcuffed wrists through the feed up port in order for Defendants to remove the handcuffs. The left cuff was removed and Plaintiff turned to his right to see the officers. Defendants ordered Plaintiff to put his arms back out through the feed up port. Plaintiff testifies that, at this point, Defendant Deluke pulled, shook, punched, and scraped Plaintiff's arm against the bars. The retention strap and handcuffs were removed and the incident ended.

Following the incident, a "use of force report" was prepared which reported that Plaintiff resisted returning the cuffs and Defendants took control of Plaintiff's hands until the cuffs were removed by a third officer, Defendant Murray. Control was maintained by pulling on the retention straps with steady continuous tension until the officers were able to grab Plaintiff's hands.

Following the documented use of force, a nurse was directed to Plaintiff's cell to evaluate him. An officer was directed to take photos of Plaintiff's injuries. Plaintiff refused to be evaluated and turned out the lights so that no pictures could be taken. Plaintiff stated that if there was to be a medical exam and pictures taken, he wanted them per his request and he wanted a full medical evaluation.

In the days following the incident, nurses made daily sick call rounds. On January 13th Plaintiff did not complain about any injury to his hand or arm. That day he complained only of a rash on his forehead and dental pain. The following day, Plaintiff made no complaints. On January 15th and 16th, Plaintiff voiced complaints of forearm pain, but the nurse observed no abrasions, swelling, or redness. On January 17th, Plaintiff saw Defendant Nurse Bayer. Plaintiff asked only that a dental appointment be scheduled. Later that day, Plaintiff was escorted to the medical unit for an evaluation. Plaintiff reported right hand and left arm pain. A nurse documented puffiness and bruising in Plaintiff's right hand and two scratches on his left arm. At this time photographs were taken. On January 18th and 19th, Defendant Bayer again saw Plaintiff. He made no complaints referable to his right hand. On January 23rd, Plaintiff again complained of right hand pain. The nurse scheduled a doctor appointment for February 17, 2006. On January 26th, Plaintiff complained to Defendant Bayer of pain and numbness in his hand. She reported that there was no evidence of swelling or of decreased range of motion. Defendant Bayer referred Plaintiff to a physician assistant who saw Plaintiff on January 28th. On January 27th, the nurse on duty noted Plaintiff's complaint of right hand pain and that he was already scheduled to see a doctor. On February 4th, Defendant Nichols saw Plaintiff. He made no complaints of right hand pain. On February 14th, Plaintiff again saw Defendant Nichols. This time Plaintiff complained of right hand pain. On February 17th, Plaintiff was seen by a doctor who ordered an X-ray. The x-ray revealed a healing fracture to the 3rd metacarpal on the right hand. Another doctor appointment was scheduled for March 14th. On March 14th, Plaintiff's doctor reported slight tenderness on the 3rd metacarpal but reported normal range of motion, normal grip strength,

and that the fracture was healing.  After March 14th, there is no evidence that Plaintiff offered any complaint of pain or problems with his right hand.

Defendants Greene, LeClaire, McLaughlin, Goord, and Daniel were not involved in the use of force or with Plaintiff's medical care.  Defendant Pauloano never treated Plaintiff.

Plaintiff filed a grievance claiming he did not promptly receive his x-ray.  There is no record of any other grievance or appeal by Plaintiff concerning the facts and circumstances of this lawsuit.

## II.     STANDARD OF REVIEW

Summary judgment, pursuant to Fed. R. Civ. P. 56(c), is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  Major League Baseball Properties, Inc. v. Salvino, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading

...."). Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ross v. McGinnis, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added]. It must be apparent that no rational finder of fact could find in favor of the non-moving party for a Court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### III.   DISCUSSION

#### a.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001).

> DOCS [New York's Department of Correctional Services] has available a well-established three-step grievance program: first an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.

Muniz v. Goord, 04-CV-0479, 2007 WL 2027912, at *4 (N.D.N.Y. July 11, 2007) (citing White v. The State of New York, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002)) (citing N.Y. Comp. Codes R. & Ergs. Tit. 7, § 701.7).

"Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies."  Muniz, 2007 WL 2027912 at *4; see Rodriguez v. Hahn, 209 F. Supp.2d 344, 347-48 (S.D.N.Y. 2002); Reyes v. Punzal, 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002).  However, the Second Circuit has held that a

three-part inquiry is appropriate where a defendant, as here, contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. See Hemphill v. State of New York, 380 F.3d 680, 686, 691 (2d Cir. 2004). First, "the Court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." Hemphill, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the Court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." Id. (citations and internal quotations omitted).

In this case, there is no evidence that Plaintiff filed a grievance alleging the excessive use of force or deliberate indifference to medical needs. See Docket No. 75 # 33 ("There is no record in the facility's computer log that [Plaintiff] filed a grievance charging excessive use of force by officers in all of 2006."). Plaintiff did file a grievance dated February 22nd and filed March 8th concerning the x-rays taken on his hand. This grievance complains that Plaintiff was not taken for his x-rays as scheduled on February 21st. This grievance was upheld on the ground that Plaintiff did receive x-rays on February 23rd (two days later than originally scheduled) and shared with him on March 14th.

It is clear, based on the fact that Plaintiff did file a grievance regarding the x-ray follow up, as well as many other non-related grievances, that the grievance process was ready and available to the Plaintiff.  <u>See</u> Docket No. 75 # 34.  The Defendants have not forfeited this defense as they raise it in their memorandum of law in support of the motion for summary judgment.  Furthermore, Plaintiff has made no allegations that Defendants prevented him from filing a grievance or alleged any special circumstances which would justify his failure to exhaust his administrative remedies.  Therefore, pursuant to PLRA, Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies for either claim.

### b.     A Broken Metacarpal Does Not Constitute a Serious Medical Condition

Assuming Plaintiff properly exhausted his administrative remedies, Plaintiff's allegations do not support a violation of the Eighth Amendment for deliberate indifference to a serious medical condition.  There are two elements to a claim of deliberate indifference to a serious medical condition, first the plaintiff "must show that she [or he] had a 'serious medical condition.'"  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).  Secondly, "the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

A serious medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Factors that have been considered in determining whether a condition is serious include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects

an individual's daily activities; or the existence of chronic and substantial pain." Chance,143 F.3d at 702 (citing McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)); accord Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (citing McGuckin and collecting cases from other circuits employing a similar standard).  The "factors listed above, while not the only ones that might be considered, are without a doubt highly relevant to the inquiry into whether a given medical condition is a serious one."  Chance, 143 F.3d at 702 (2d Cir. 1998).

The most serious injury that Plaintiff alleges is the fracture to his third metacarpal. Plaintiff's deliberate indifference claim fails because a fractured metacarpal does not rise to the level of a serious medical condition.  See Sonds v. St. Barnabas Hospital Correctional Health Services, 151 F. Supp. 303, 311 (S.D.N.Y. 2001) ("Case law holds that the objective prong of the deliberate indifference test is not satisfied even where a finger is broken"); Ruiz v. Homerighouse, 01-CV-0266E, 2003 WL 21382896,  at *3 (W.D.N.Y. Feb. 13, 2003) (claim dismissed as a matter of law because fractured metacarpal is not sufficiently serious medical condition to support a deliberate indifference claim); Magee v. Childs, CIV904CV1089-GLSRFT, 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006) ("many courts have held that a broken finger does not constitute a serious injury").  Plaintiff has alleged insufficient facts from which it reasonably may be concluded that the injury to his finger was sufficiently serious.[1]  Therefore, Plaintiff's claim of deliberate indifference to a serious medical need fails as a matter of law because Plaintiff fails to allege a serious medical condition.

---

[1] Evidence shows that the fracture to Plaintiff's finger healed on its own with no resulting loss of motion or grip strength.

Furthermore, returning to Plaintiff's grievance, Defendants' delay in performing an x-ray on Plaintiff's hand does not rise to the level of deliberate indifference to a serious medical condition because x-rays were completed within two days of Plaintiff's grievance and the delay did not cause any further harm or injury.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.

Dated: November 2, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge